# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SAMUEL A. NJEGOVAN JR., | ) CASE NO. 5:21-CV-00002-CEH |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) MEMORANDUM ORDER AND OPINION |
| Defendant, | ) |

**I.  Introduction**

Plaintiff, Samuel Njegovan, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 19). Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Njegovan SSI.

**II.  Procedural History**

On July 12, 2018, Njegovan filed an application for SSI, alleging a disability onset date of April 19, 2011. (ECF No. 16, PageID #: 206). The application was denied initially and upon reconsideration, and Njegovan requested a hearing before an administrative law judge ("ALJ"). (ECF No. 16, PageID #: 243). On February 20, 2020, an ALJ held a hearing, during which Njegovan, represented by counsel, and an impartial vocational expert testified. (ECF No. 16, PageID #: 134). On May 20, 2020, the ALJ issued a written decision finding Njegovan was not

disabled. (ECF No. 16, PageID #: 113). The ALJ's decision became final on November 10, 2020, when the Appeals Council declined further review. (ECF No. 16, PageID #: 102).

On January 3, 2021, Njegovan filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 22, 24, 26). Njegovan asserts the following assignment of error:

> The ALJ erred at Step Four (4) by creating an RFC that is not supported by substantial evidence

(ECF No. 22 at 1, 6).

### III. Background

#### A. Relevant Hearing Testimony

At the hearing, Njegovan stated that he could not work due to back pain caused by degenerated discs. (ECF No. 16, PageID #: 144). He also complained of knee, feet, and shoulder pain. (ECF No. 16, PageID #: 144). Njegovan reported that he takes medication, does physical therapy, and receives injections for the pain but it has not subsided. (ECF No. 16, PageID #: 145–46). He can stand for thirty minutes before he must sit down. (ECF No. 16, PageID #: 147). Njegovan cannot walk very far or carry much weight. (ECF No. 16, PageID #: 154, 157–58).

#### B. Relevant Medical Evidence[1]

The ALJ summarized Njegovan's health records and symptoms:

> In terms of the claimant's alleged obesity, he recorded a body weight of 230 pounds on July 11, 2018 (B1F/50), which corresponds to a body mass index in excess of thirty-two. In turn, this is consistent with a body weight of 243 pounds, recorded on August 30, 2019 (B8F/1), and a body weight of 246 pounds, recorded on January 10, 2020 (B13F/5). Although no direct medical evidence indicates that the existence of this impairment causes the claimant excess fatigue, or unduly restricts his ability to

---

[1] Njegovan's argument involves his physical impairments only. As such, the Court does not discuss his mental impairments.

move about freely within the workplace, I nevertheless identify this impairment as severe for its contributory effects, potentially marked, on the claimant's other severe impairments, particularly those affecting his weight bearing, musculoskeletal system. In terms of the claimant's alleged degenerative disc disease of the lumbar spine, diagnostic imaging of the lumbar spine, dated August 23, 2019, indicated moderate loss of disc height at the L4-5 vertebral body, with bulging at the L3-4 and L4-5 joints, causing mild canal and foraminal stenosis, but no definitive compressive pathology, stable since 2017 (B10F/76). Updated imaging, dated April 24, 2020, reported findings similar to 2019, with possible, mild displacement of the L5 nerve root (B12F/3). Electrodiagnostic testing, dated May 1, 2020, indicated a chronic, left L5 radiculopathy, and possible S1 radiculopathy (B12F/1). While these findings would be consistent with the claimant's allegations of low back pain, the record, when considered as a whole, is not supportive of the contention that the existence of this impairment would be preclusive of all types of work. Radiographic study of the lumbar spine, dated June 23, 2019, indicated mild scoliosis of the thoracic and lumbar spine, with mild to moderate degenerative changes in the lumbar spine (B10F/39). "Updated" x-ray, dated April 24, 2020, indicated no significant change (B12F/3). The claimant has followed a regimen of prescription medications discernibly addressed to this impairment (B1E/5), (B13E/2). These have generally been at least partially effective in attenuating the claimant's symptoms (B10F/24, 93). In reports to the Agency, the claimant has reported a multitude of side effects from this use of his medications (B4E/7); however, he has consistently denied any side effects in reports to the prescriber (B10F/24, 93). He has been engaged in a course of formal pain management, which has included epidural steroid injections, and radiofrequency ablations of the lower lumbar spine. These had been uniformly effective, over a lengthy period of time (B1F/50), (B5F/123), (B10F/31), until his last epidural steroid injection, completed on October 30, 2019 (B10F/104), which provided only 20% relief for a few days (B10F/114). He requested (B5F/117), but did not discernibly engage in chiropractic therapy during the period strictly relevant to this claim. He did not discernibly engage in a course of physical therapy during the period strictly relevant to this claim. On May 1, 2020, he was offered surgical decompression (B12F/3), but it is unknown, as of the date of this decision, if he will attempt the treatment. Clinical examinations included in the record have consistently reported either mildly adverse, or benign findings, including one dated July 11, 2018, which indicated reduced lumbar range of motion, tenderness, an abnormal gait, abnormal straight leg raises and positive facet

3

> loading tests, but with normal sensory function, strength and reflexes (B1F/52), one dated June 17, 2019, which reported reduced lumbar range of motion, tenderness, an abnormal gait, abnormal straight leg raises and positive facet loading tests, but with normal sensory function, strength and reflexes (B10F/34), or one dated January 20, 2010, which reported that the claimant presented with an antalgic gait, using an assistive device, exhibited asymmetric Achilles reflexes, and four of five strength at the left ankle, but otherwise normal strength, normal sensory function throughout, normal, symmetric reflexes, and intact heel gait and toe gait (B13F/5). In terms of the claimant's alleged hypertension, although diagnosed, this impairment appears well-controlled with standard medications, as he has consistently recorded systolic pressures of 140 mm/Hg or less and diastolic pressures of 90 mm/Hg or less, as he did on July 11, 2018 (B1F/50), (June 14, 2019 (B8F/7), and January 10, 2020 (B13F/5).

(ECF No. 16, PageID #: 123–24).

C.     **Opinion Evidence at Issue**

On March 12, 2019, physical therapist Jim Micali conducted a functional capacity evaluation. (ECF No. 16, PageID #: 662–71). John Robinson, M.D., Njegovan's primary care provider, cosigned the evaluation. (ECF No. 16, PageID #: 670). The providers opined: "Samuel Njegovan gave good consistent effort during all FCE tasks indicating an honest performance output. He has multiple impairments as indicated including the lumbar spine that affect his functional performance. His FCE performance indicates that his workability classification is SEDENTARY as described in this report." (ECF No. 16, PageID #: 670). The ALJ considered this opinion and stated:

> Mr. Micali examined the claimant on a single occasion and was reporting within the bounds of his professional certifications. Dr. Robinson has seen the claimant over a lengthy period and is reporting within the bounds of his professional certifications and specialty. However, the only measures of reliability were the direct observations of the test administrator (B6F/7). The restrictions suggested, by comparison to the overall evidence of record, described in digest form above, are not consistent with, or

4

supported by, the evidence of record, and so, this opinion is not persuasive.

(ECF No. 16, PageID #: 126).

IV.     **The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: obesity, hypertension, lumbar degenerative disc disease and radiculopathy, major depression and attention deficithyperactivity disorder (20 CFR 416.920(c)). This finding departs from that of the previous decision, in order to account for the severe impairments documented in the current evidence.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). This finding adheres to that of the previous decision.
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant may frequently stoop, kneel, crouch, crawl, climb ramps and stairs, but never climb ladders, ropes or scaffolds; the claimant must avoid exposure to unprotected heights and dangerous moving machinery; the claimant is limited to the performance of simple, routine, repetitive tasks, undertaken in a setting free of "piece-rate" work or assembly line work.

(ECF No. 16, PageID #: 118–19, 122).

V.      **Law & Analysis**

   A.      **Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.    Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r*

6

*of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

    C.       **Discussion**

Njegovan raises one issue on appeal. He argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not explain why he found Dr. Robinson's opinion not persuasive. At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

7

As discussed above, Dr. Robinson cosigned a functional capacity evaluation performed by a physical therapist. In relevant part, the providers opined that Njegovan was limited to sedentary work with certain additional limitations. The ALJ concluded that this opinion was not persuasive. He reasoned that "the only measures of reliability were the direct observations of the test administrator." (ECF No. 16, PageID # 126). The ALJ also explained that "[t]he restrictions suggested, by comparison to the overall evidence of record, described in digest form above, are not consistent with, or supported by, the evidence of record." (ECF No. 16, PageID # 126).

Njegovan argues that the ALJ's explanation did not build a logical bridge because he "did not cite, summarize, or reference a single record to support the generalized claim" that the opinion was not consistent with or supported by the medical record. (ECF No. 22 at 7). Njegovan suggests that the ALJ did not cite any examples because there were none. The Commissioner responds that the ALJ specifically stated that the opinion was not supported by or consistent with the medical evidence. The Commissioner asserts that the ALJ explained why he agreed with a limitation to light work instead of sedentary in the paragraph preceding this discussion. The ALJ also pointed out that the evaluation was not reliable because it was based on the direct observations of the test administrator.

The Court first notes that an ALJ's decision is read as a whole. *See Hill v. Comm'r of Soc. Sec.,* 560 F. App'x 547, 551 (6th Cir. 2014). As long as the ALJ discussed the supportability and consistency of the opinion and supported his conclusions with substantial evidence within his decision, the Court will not disturb his decision. *See Bruno v. Comm'r of Soc. Sec.*, No. 1:20-CV-2633, 2021 WL 6494779, at *8 (N.D. Ohio Dec. 3, 2021), *report and recommendation adopted sub nom. Bruno v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-02633, 2022 WL 125289 (N.D. Ohio Jan. 13, 2022). Looking at the decision as a whole, the Court concludes that the ALJ

8

provided a logical bridge for the Court to follow. Regarding consistency, the ALJ stated that the opinion was not consistent with the record. Although the ALJ did not explain this statement in the paragraph discussing the opinion, looking to the preceding paragraph, the ALJ explained why he found Njegovan could perform light work with some limitations. He explained:

> The record shows an obese claimant, compounding the effects of a spine disorder, but without indication of instability (B10F/39), or compressive pathology (B10F/76), (B12F/3), and with hypertension, but appearing well-controlled (B1F/50), (B13F/5) on standard prescription therapy. Clinical examinations included in the record have consistently reported preserved strength and neurological function (B1F/52), (B13F/5), including gait (B8F/14), (B9F/1), and the claimant has retained an array of activities of daily living of sufficient breadth to encompass typical, indoor household chores and daily exercise (B4F/2), (B8F/6). Restriction to light work is appropriate on this evidence; however, I have added mild postural limitations, pertinent to those maneuvers that most bring the low back into play.

(ECF No. 16, PageID #: 126). Explaining how the evidence supports a finding of Njegovan's ability to perform light work demonstrates how the evidence is inconsistent with a limitation to sedentary work.

Nonetheless, Njeogvan additionally argues that the ALJ ignored abnormal findings, "cherry-picking" evidence to support his conclusions. "The problem with a cherry-picking argument is that it runs both ways. [Claimant] argues the ALJ only focused on the positives, whereas his brief emphasizes the negatives. Crediting [Claimant's] argument here would require the Court to re-weigh evidence — which it cannot do." *Colvin v. Comm'r of Soc. Sec.*, No. 5:18 CV 1249, 2019 WL 3741020, at *14 (N.D. Ohio May 8, 2019). Instead, to be successful, a claimant must show that the ALJ's decision is not supported by substantial evidence. "[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is not sufficient

9

evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). The Court determines that despite the evidence Njegovan showcases (evidence of limited range of motion, straight leg raises, abnormal gait, tenderness spasms, and sensory deficits), the ALJ's decision is supported by substantial evidence. Importantly, the ALJ acknowledged reports that demonstrated "reduced lumbar range of motion, tenderness, an abnormal gait, abnormal straight leg raises and positive face loading tests." (ECF No. 16, PageID #: 124). However, he relied on findings of "normal sensory function, strength, and reflexes" to make his decision. (ECF No. 16, PageID #: 124). The ALJ did not err in doing so. The Court concludes that there was substantial evidence to support his decision.

Similarly, looking at the decision as a whole, the ALJ adequately explained the supportability factor. Before discussing the medical evidence, the ALJ noted "significant inconsistencies" within the record. (ECF No. 16, PageID #: 122). These inconsistencies included Njegovan's pain reactions despite lack of an objective basis for the pain[2] and the presence of an abnormal gait in certain settings but not in others. (ECF No. 16, PageID #: 122). The ALJ stated that these inconsistencies required that Njegovan's "subjective reporting, and evidence primarily derivative of his subjective reporting, be considered with utmost care." (ECF No. 16, PageID #: 123). Then, in discussing the opinion at issue here, the ALJ recognized that the medical providers reported within the bounds of their professional certifications, but stated: "However,

---

[2] Njegovan disputes the accuracy of the ALJ's statement that there was little objective basis for his pain reaction. He states that the record the ALJ cited to was not based on an exam and, thus, does not support his statement. The Court disagrees with this assessment. The record cited to indicates that, following an x-ray (objective medical evidence), Njegovan's doctor's impression was "mild scoliosis of the thoracic and lumbar spine with associated mild-to-moderate multilevel degenerative change" and no acute findings. (ECF No. 16, PageID #: 763). This x-ray followed a physical examination in which Njegovan expressed back tenderness and pain. (ECF No. 16, PageID #: 755). This is substantial evidence to support the ALJ's conclusion.

the only measures of reliability were the direct observations of the test administrator." (ECF No. 16, PageID #: 126). The direct observations were derived from Njeogvan's subjective reporting and performance of certain exercises. The ALJ's statement in combination with his previous statements about Njegovan's subjective reports indicates that the ALJ found that direct observations were not reliable and, therefore, the opinion lacked supportability. The Court concludes that this is substantial evidence to support such a conclusion. Accordingly, the Court finds no reason to disturb the ALJ's decision.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Njegovan SSI.

**IT IS SO ORDERED.**

Dated: May 13, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE
